FILED
2021 Jul-08  AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| TAKIRA TAYLOR, | ) | |
| | ) | |
| PLAINTIFF, | ) | CASE NO.: 2:21-cv-00832-ACA |
| | ) | |
| v. | ) | |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | PLAINTIFF DEMANDS A TRIAL |
| CORRECTIONS D/B/A WILLIAM | ) | BY STRUCK JURY |
| DONALDSON CORRECTIONAL | ) | |
| FACILITY AND LT. EDDIE | ) | |
| WATTS, AN INDIVIDUAL, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

## FIRST AMENDED COMPLAINT

## JURISDICTION AND VENUE

1.     Plaintiff seeks legal and equitable relief to redress violations by the

Defendants of the Plaintiff's rights secured by the following:

> a.     Title VII of the Civil Rights Act of 1964, as amended, 42
>
> U.S.C. § 2000e, *et seq*. ("Title VII");
>
> b.     Americans with Disabilities Act ("ADA"), and the Americans
>
> with Disabilities Act Amendments Act ("ADAAA");
>
> c.     42 U.S.C. § 1983; and

d.      The laws of the State of Alabama.

2.      Supplemental Jurisdiction is proper pursuant to 28 U.S.C. § 1367.

All of Taylor's claims arise out of a common nucleus of operative fact.

3.      Venue lies within the Northern District of Alabama pursuant to 28

U.S.C. § 1391.

## PARTIES

4.      Takira Taylor ("Taylor") is a female over the age of nineteen

(19). Taylor is a resident of Jefferson County, and was employed by the Alabama

Department of Corrections d/b/a William Donaldson Correctional Facility

("Donaldson") in Jefferson County, Alabama.

5.      At all times relevant to this Complaint, Donaldson was, and is, a

correctional facility entity subject to suit in Jefferson County Alabama, within the

Northern District of Alabama. Donaldson employs at least fifteen (15) persons

within the meaning of Title VII, 42 U.S.C. § 2000e(b), as amended, and 42 U.S.C.

§ 1983.

6.      Defendant Lt. Eddie Watts ("Lt. Watts") is an male individual over

the age of nineteen (19). Lt. Watts is a lieutenant of the William Donaldson

Correctional Facility and a resident of Jefferson County, Alabama.

## ADMINISTRATIVE PROCEDURES

7.      On September 25, 2020 within 180 days of the acts of discrimination

of which she complains, Taylor filed a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"). **(See Doc. 1-1, Exhibit A).**

8.      On January 4, 2021 Taylor filed an Amended Charge of Discrimination with the EEOC. **(See Doc. 1-2, Exhibit B).**

9.      On March 19, 2021, Ms. Taylor received a Notice of Right to Sue from the EEOC. **(See Doc. 1-3, Exhibit C).**

10.      On January 4, 2021 within 180 days of the acts of discrimination of which she complains, Taylor filed a Second Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). **(See Exhibit D).**

11.      On July 7, 2021, Ms. Taylor received the Second Notice of Right to Sue from the EEOC. **(See Exhibit E).**

12.      Ms. Taylor has met all the prerequisites for the filing of this lawsuit.

## STATEMENT OF FACTS

13.      In or around March 2019, Taylor was hired by William Donaldson Correctional Facility in the position of Correctional Officer Senior ("CO1") in Bessemer, Alabama.

14.      All Lieutenants, Captains, and Wardens were over Taylor in authority at work.

15.      In or around December 21, 2019, Taylor called Lt. Watts from a work phone on a work related matter.

16.      Lt. Watts and Taylor remained on the phone for over an hour.

17.    In or around Saturday December 28, 2019, Lt. Watts invited Taylor to his house.

18.    Taylor was not feeling well, and Lt. Watts said he would "doctor" her to feeling better.

19.    In or around December 28, 2019, Taylor and Lt. Watts' sexual relationship began that night.

20.    Shortly thereafter Taylor shared with Lt. Watts that she suffered from anxiety, depression, and seizures.

21.    Lt. Watts began telling Taylor that he did not like her talking to other males at work.

22.    Lt. Watts became very controlling and Taylor was afraid to make him mad.

23.    In or around the end of January 2020, Lt. Watts began slapping Taylor in the face.

24.    Lt. Watts open handedly slapped Taylor approximately six (6) times.

25.    In or around the end of February 2020, Lt. Watts began choking Taylor when he was upset with her.

26.    Lieutenant Watts choked Taylor approximately two (2) times.

27.    When Watts was upset with Taylor he would take his anger out on her while at work.

28.    In or around March 28, 2020,  Taylor texted Lt. Watts and told him that: 1) she was so afraid of him; 2) she was afraid to say or do anything wrong because that would upset him; 3) when he yells at her it is frightening; and 4) he makes her feel less than.

29.    Lt. Watts told Taylor it was in her best interest not to betray him.

30.    In or around April 2, 2020, Taylor went to Lt. Watts' house.

31.    Taylor sat on the sofa with Lt. Watts and he turned on a movie.

32.    Taylor began to talk to her about her work day and all of a sudden Lt. Watts grabbed her hand and placed it on his penis.

33.    As Taylor continued to talk, Lt. Watts guided her hand up and down his penis.

34.    Then Lt. Watts placed his hand on the back of Taylor's head and pulled it down to begin sucking his penis.

35.    Taylor could not move her head and was scared to make Lt. Watts upset.

36.    Taylor was afraid of Lt. Watts.

37.    After it was over, Taylor immediately gathered her things and left Lt. Watts' house.

38.    After Lt. Watts forced Taylor to engage in oral sex with him, Taylor ended the sexual relationship.

39.     Taylor was extremely offended by being forced into a sex act with her superior.

40.     When Taylor ended the sexual relationship Lt. Watts began treating her harshly at work.

41.     In or around May 3, 2020, as Taylor was walking into work, Lt. Watts, asked Taylor if she was going to pull her hair back.

42.     Taylor replied that she was going to do it when she got to her post.

43.     When Taylor got to her post she pulled her hair back.

44.     In or around May 4, 2020 at approximately 3:00 p.m. Taylor had a meeting with Captain Johnson, Captain Scott, and Warden Peters.

45.     Captain Johnson asked Taylor about her hair being down on May 3, 2020.

46.     Taylor responded by saying she pulled it up when she got to her post.

47.     Then Captain Johnson told Taylor that she had a bad attitude with Lt. Watts.

48.     Captain Johnson also said she was tired of talking to Taylor about her calling in to miss work.

49.     Taylor and Captain Johnson had never talked about her calling in to miss work prior to this conversation.

50.     The only time Taylor called-in to miss work was for medical reasons

and when Taylor had been hospitalized for nineteen (19) hours.

51.     Then Captain Johnson said she does not want Taylor working on her shift.

52.     Captain Scott wanted to restrict Taylor from working on the first shift.

53.     Captain Johnson told Taylor that she needed to change shifts and that she is not about to stop running the prison to accommodate Taylor and her situation.

54.     In or around May 6, 2020, Taylor was accused of stealing time at work.

55.     Around May 10, 2020, Lt. Watts approached Taylor at work and said that no matter what Taylor said or tried to do to him with his superiors that it would not work.

56.     In or around May 11, 2020, Taylor sent a formal written complaint to Warden Peters and the Defendant's EEO representative, Ms. Contenna Moore.

57.     In Taylor's formal written complaint to Donaldson she complains of: how she was afraid of Lt. Watts; her sexual relationship with Lt. Watts; and the trauma she experienced when Lt. Watts forced her to give him oral sex.

58.     In or around May 13, 2020, Taylor received a Letter of Instruction from Warden Peters in regards to her formal complaint.

59.     In the Letter of Instruction, Warden Peters stated that there is no evidence of harassment or a hostile work environment by Lt. Watts or any other staff member towards Taylor.

60.     In or around May 13, 2020, and on the same day, Warden Peters sent Taylor a Pre-Dismissal Memorandum that alleged she committed six (6) violations and seven (7) infractions at work.

61.     Warden Peters' Memo recommends that Taylor be dismissed as a CO1.

62.     From in or around May 25, 2020 to approximately June 21, 2020, Taylor began getting harassing anonymous text messages from an unidentified number.

63.     Taylor believes that it was Lt. Watts because he mentioned sensitive matters that Taylor told him and people that they work with at Donaldson.

64.     The unidentified number kept talking about how he missed Taylor giving him oral sex, mentioned people Taylor worked with, and apologized for what he did.

65.     The content of the text messages that was sent to Taylor include: "You don't want Greg (Donaldson's Officer Greg Downey) to know you are just what he thinks you are NOTHING"; "Yo pussy garbage but your deep throat is all that"; "Fabo (Donaldson's Officer Fabian Banks) says you are a dead beat";  "Deep throat I miss your head"; "Stop acting crazy and accept my apology"; "My dick is big as fuck you remember"; "choked and slurped on my dick"; "when are you going to let me wet your throat up"; "I am trying to get my dick sucked again"; "Are you going to link back up with me"; "Ain't nobody playing I tried to say I was sorry"; and "I

am a male from your past. I told you I was jealous and it was fucked up what I did."

66.     In or around July 1, 2020, Taylor had a Pre-Dismissal Hearing and was under extreme anxiety.

67.     Taylor produced three (3) written statements of co-workers who defended her position that she was indeed present at work.

68.     In or around July 10, 2020, Taylor was admitted in the hospital for approximately four (4) nights for anxiety and depression.

69.     In or around July 17, 2020, Taylor returned to work and unexpectedly ran into Captain Johnson and had an anxiety attack.

70.     In or around July 17, 2020, Taylor was sent home from work.

71.     Shortly thereafter Taylor was accused of stealing contraband and using cocaine.

72.     Taylor voluntarily submitted herself to drug screens and she was negative for using illegal drugs.

73.     Captain Johnson has accused Taylor of being a "dirty cop".

74.     In or around August 8, 2020, Taylor went to the hospital and had a seizure while she was at the hospital.

75.     Taylor was cleared to return to work by the doctor for "desk work only".

76.     In or around August 10, 2020, Warden Peters and Warden Morgan

accused Taylor of vandalizing Lt. Watts vehicle.

77.   Taylor did not vandalize Lt. Watts' car.

78.   In or around August 14, 2020, Taylor got another "New Pre-Dismissal" Letter.

79.   In or around August 31, 2020, Taylor was called to Warden Morgan's office.

80.   Warden Morgan read Taylor her Pre-dismissal paperwork, but said it was unclear and told Taylor to return to her post.

81.   In or around September 1, 2020, Taylor had a scheduled doctor's appointment.

82.   In or around September 1, 2020, Taylor missed that doctor's appointment because she had a terrible headache and was unable to drive.

83.   In or around September 1, 2020, Taylor also called in to miss work that day.

84.   Warden Peters called Taylor back and spoke with Taylor's uncle about her condition.

85.   Taylor called Warden Peters back that day and told him that she would not be able to speak or meet to any of the 900's (wardens or captains) without her lawyer present.

86.   In or around September 2, 2020, Taylor called Donaldson to see when

she could return to work.

87.     Taylor was informed that Warden Peters sent an email to the staff saying she was not allowed on the premises.

88.     In or around September 3, 2020, Taylor called Donaldson and spoke with her supervisor, Sgt. Omar Parker, and asked if Warden Peters really sent an email stating that she was not allowed on the premises.

89.     Sgt. Parker told Taylor that Warden Peters did send out an email to the staff saying that Taylor was not allowed on the premises.

90.     Shortly thereafter Taylor emailed Warden Peters stating: 1) that she never received his email; 2) that she will be coming to work if she did not hear from him by noon the next day; and 3) that she did not want to meet with any of the 900's without her lawyer present.

91.     In or around September 4, 2020, Taylor went to work and was stopped at the gate by the K9 unit.

92.     The K9 unit told Taylor to exit her vehicle, stand on the other side of the road, and wait until Warden Peters arrived.

93.     When Warden Peters arrived he read out loud a Mandatory Leave Placement Letter to Taylor that placed her on leave for ten (10) days.

94.     In or around September 23, 2020, Taylor emailed Warden Peters about coming back to work.

95.     Warden Peters said her mandatory leave was extended ten (10) more days.

96.     In or around September 30, 2020, Taylor received a letter stating that her employment had been terminated, but the letter was dated September 14, 2020.

97.     In or around October 17, 2020, Taylor received threatening text messages from the unknown number telling her: "I told you it was in your best interest not to betray me"; "you know who this is and how u texting but won't pick up"; "so you know who I am now good. Naïve little girl you really think fubo (Donaldson's Officer Fabian Banks), gary d (Donaldson's Officer Gary Downey), and grey (Donaldson's Officer Grey), is actually on your side" ; "there is no way you can run from us"; "why didn't you just do what you were told"; "you had some good pussy and head I tell you that"; "canche this charge and give me what's mine. I'll still own you"; "you know I can make all of this go away. All you have to do is come over"; "you know we have power. We have power both ways after any of our conversations you should know how we operate"; "we all know Caldwell had you real good"; "call of the lawsuit or the death you always wanted will approach you soon…"; and "I am not worried about anything this won't be traced back to me".

98.     Taylor believes it was Lt. Watts who sent her the threatening and harassing text messages.

99.     In or around November 20, 2020 at 7 p.m., Taylor was driving on I-459 and another car jarred at her car causing her to run off the road.

100.    At least two people on the passenger side of the threatening car began shooting their guns in the air.

101.    Taylor believes this was done to her by the Defendants and filed a police report.

## STATEMENT OF PLAINTIFF'S CLAIMS

### COUNT ONE

#### STATEMENT OF PLAINTIFF'S TITLE VII CLAIMS
#### SEXUAL HARASSMENT & RETALIATION
#### AGAINST WILLIAM DONALDSON CORRECTIONAL FACILITY

102.    In or around December 28, 2019, Taylor and Lt. Watts' sexual relationship began that night.

103.    Shortly thereafter Taylor shared with Lt. Watts that she suffered from anxiety, depression, and seizures.

104.    Lt. Watts began telling Taylor that he did not like her talking to other males at work and began trying to control her actions.

105.    Taylor was afraid of Lt. Watts.

106.    In or around the end of January 2020, Lt. Watts began slapping Taylor in the face.

107.    Lt. Watts slapped Taylor approximately six (6) times.

108.    In or around the end of February 2020, Lt. Watts began choking Taylor when he became upset.

109.    Lt. Watts choked Taylor approximately two (2) times.

110.    When Watts was upset with Taylor he would take his anger out on her while at work.

111.    In or around March 28, 2020,  Taylor texted Lt. Watts and told him that: 1) she was so afraid of him; 2) she was afraid to say or do anything wrong because that would upset him; 3) when he yells at her it is frightening; and 4) he makes her feel less than.

112.    Lt. Watts told Taylor it was in her best interest not to betray him.

113.    In or around April 2, 2020, Taylor went to Lt. Watts' house.

114.    Taylor sat on the sofa with Lt. Watts and he turned on a movie.

115.    Taylor began to talk to her about her work day and all of a sudden Lt. Watts grabbed her hand and placed it on his penis. As Taylor continued to talk Lt. Watts guided her hand up and down his penis. Then Lt. Watts placed his hand on the back of Taylor's head and pulled it down to begin sucking his penis.

116.    Taylor could not move her head and was scared to make Lt. Watts upset.

117.    Taylor was afraid of Lt. Watts.

118.    After it was over, Taylor immediately gathered her things and left Lt.

Watts' house.

119.    After Lt. Watts forced Taylor to engage in oral sex with him, Taylor ended the sexual relationship.

120.    Taylor was extremely offended, embarrassed, and ashamed by being forced into a sex act with her superior.

121.    When Taylor ended the sexual relationship Lt. Watts began treating her harshly at work.

122.    In or around May 6, 2020, Taylor was accused of stealing time at work.

123.    Around May 10, 2020, Lt. Watts approached Taylor at work and said that no matter what Taylor said or tried to do to him with his superiors that it would not work.

124.    In or around May 11, 2020, Taylor sent a formal written complaint to Warden Peters and the Defendant's EEO representative, Ms. Contenna Moore.

125.    In Taylor's formal written complaint to Donaldson she complains of: how she was afraid of Lt. Watts; her sexual relationship with Lt. Watts; and the trauma she experienced when Lt. Watts forced her to give him oral sex.

126.    In or around May 13, 2020, Taylor received a Letter of Instruction from Warden Peters in regards to her formal complaint.

127.    In the Letter of Instruction, Warden Peters stated that there is no evidence of harassment or a hostile work environment by Lt. Watts or any other

staff member towards Taylor.

128.   In or around May 13, 2020, Warden Peters sent Taylor a Pre-Dismissal Memorandum that alleged she committed six (6) violations and seven (7) infractions at work.

129.   In or around May 13, 2020, Warden Peters' Memo recommends that Taylor be dismissed as a CO1.

130.   From in or around May 25, 2020 to approximately June 21, 2020, Taylor began getting harassing anonymous text messages from an unidentified number.

131.   Taylor believes that it was Lt. Watts because he mentioned sensitive matters that Taylor told him and people that they work with at Donaldson.

132.   The unidentified number kept talking about how he missed Taylor giving him oral sex, mentioned people Taylor worked with, and apologized for what he did.

133.   The content of the text messages that was sent to Taylor include: "You don't want Greg (Donaldson's Officer Greg Downey) to know you are just what he thinks you are NOTHING"; "Yo pussy garbage but your deep throat is all that"; "Fabo (Donaldson's Officer Fabian Banks) says you are a dead beat";  "Deep throat I miss your head"; "Stop acting crazy and accept my apology"; "My dick is big as fuck you remember"; "choked and slurped on my dick"; "when are you going to let

me wet your throat up"; "I am trying to get my dick sucked again"; "Are you going to link back up with me"; "Ain't nobody playing I tried to say I was sorry"; and "I am a male from your past. I told you I was jealous and it was fucked up what I did."

134.    In or around July 1, 2020, Taylor had a Pre-Dismissal Hearing and was under extreme anxiety.

135.    In or around September 30, 2020, Taylor received a letter stating that her employment had been terminated, but the letter was dated September 14, 2020.

136.    In or around October 17, 2020, Taylor received threatening text messages from the unknown number telling her: "I told you it was in your best interest not to betray me"; "you know who this is and how u texting but won't pick up"; "so you know who I am now good. Naïve little girl you really think fubo (Donaldson's Officer Fabian Banks), gary d (Donaldson's Officer Gary Downey), and grey (Donaldson's Officer Grey), is actually on your side" ; "there is no way you can run from us"; "why didn't you just do what you were told"; "you had some good pussy and head I tell you that"; "canche this charge and give me what's mine. I'll still own you"; "you know I can make all of this go away. All you have to do is come over"; "you know we have power. We have power both ways after any of our conversations you should know how we operate"; "we all know Caldwell (Donaldson's Captain Caldwell) had you real good"; "call of the lawsuit

or the death you always wanted will approach you soon…"; and "I am not worried about anything this won't be traced back to me".

137.   Lt. Watts sent Taylor the threatening and harassing text messages.

138.   In or around November 20, 2020 at 7 p.m., Taylor was driving on I-459 and another car jarred at her car causing her to run off the road. At least two people on the passenger side of the threatening car began shooting their guns in the air.

139.   Taylor is a female and a member of a protected class.

140.   William Donaldson Correctional Facility targeted Taylor based on her sex and subjected her to adverse treatment.

141.   Taylor's sex was a motivating factor in William Donaldson Correctional Facility's decision to subject her to adverse employment actions. *Quigg v. Thomas County Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016).

142.   Taylor suffered less preferential terms and conditions of employment than similarly-situated male employees.

143.   Taylor was terminated by a male and was denied income.

144.   Taylor was subject to gender derogatory and sexual remarks and acts from her supervisor, Lt. Watts.

145.   Lt. Watts frequently made sexual comments to Taylor, sexually propositioned her, and forced her to give him perform oral sex.

146.   Taylor was forced twice into mandatory leave.

147.   Taylor sent a formal complaint about gender discrimination to Warden Peters and the Defendant's EEO representative, Ms. Contenna Moore.

148.    Taylor's complaints were never investigated or remedied.

149.   Taylor suffered retaliation after she complained of sexual harassment.

150.   Taylor was terminated after her complaints of gender discrimination.

151.   In retaliation for Taylor's formal complaints, Warden Peters sends Taylor a Pre-Dismissal Memorandum that alleged she committed six (6) violations and seven (7) infractions at work and recommends that Taylor be dismissed as a CO1.

152.   Such  unlawful employment practices proximately caused Taylor to suffer severe emotional distress, mental anguish, embarrassment, humiliation, shame, trauma, financial loss, and loss of employment opportunity for which she claims damages.

153.   Taylor seeks declaratory and injunctive relief, award of lost wages, back pay, front pay, interest, nominal, compensatory and punitive damages for humiliation, embarrassment, and mental anguish, costs, attorneys' fees and  any and all such other relief the trier of fact may assess.

## COUNT TWO

### STATEMENT OF PLAINTIFF'S ADA/ADAAA
### DISPARATE TREATMENT & RETALIATION CLAIMS

**AGAINST WILLIAM DONALDSON CORRECTIONAL FACILITY**

154.   In  or around January 2020, Taylor told Lt. Watts that she suffered from anxiety and depression.

155.   In early to mid 2020 Taylor had been hospitalized for nineteen (19) hours for anxiety and depression.

156.   In or around July 1, 2020, Taylor had a Pre-Dismissal Hearing and was under extreme anxiety.

157.   In or around July 10, 2020, Taylor was admitted in the hospital for approximately four (4) nights for anxiety and depression.

158.   In or around July 17, 2020, Taylor returned to work and unexpectedly ran into Captain Johnson and had an anxiety attack.

159.   In or around July 17, 2020, Taylor was sent home from work.

160.   Shortly thereafter Taylor was accused of stealing contraband and using cocaine.

161.   Taylor voluntarily submitted herself to drug screens and she was negative for using illegal drugs.

162.   Captain Johnson accused Taylor of being a "dirty cop".

163.   In or around August 8, 2020, Taylor went to the hospital and had a seizure while she was at the hospital.

164.   Taylor was cleared to return to work by the doctor for "desk work

only".

165.   In or around August 10, 2020, Warden Peters and Warden Morgan accused Taylor of vandalizing Lt. Watts vehicle.

166.   Taylor did not vandalize Lt. Watts' car.

167.   In or around August 14, 2020, Taylor got another "New Pre-Dismissal" Letter.

168.   In or around September 1, 2020, Taylor had a scheduled doctor's appointment, but missed that doctor's appointment because she had a terrible headache and was unable to drive.

169.   In or around September 1, 2020, Taylor also called in to miss work that day because of her illness.

170.   Warden Peters called Taylor back and spoke with Taylor's uncle about her condition.

171.   Taylor called Warden Peters back that day and told him that she would not be able to speak or meet to any of the 900's (wardens or captains) without her lawyer present.

172.   In or around September 2, 2020, Taylor called Donaldson to see when she could return to work.

173.   Taylor was informed that Warden Peters sent an email to the staff saying she was not allowed on the premises.

174.   In or around September 3, 2020, Taylor called Donaldson and spoke with her supervisor, Sgt. Omar Parker, and asked if Warden Peters really sent an email stating that she was not allowed on the premises.

175.   Sgt. Parker told Taylor that Warden Peters did send out an email to the staff saying that Taylor was not allowed on the premises.

176.   Shortly thereafter Taylor emailed Warden Peters stating: 1) that she never received his email; 2) that she will be coming to work if she did not hear from him by noon the next day; and 3) that she did not want to meet with any of the 900's without her lawyer present.

177.   In or around September 4, 2020, Taylor went to work and was stopped at the gate by the K9 unit.

178.   The K9 unit told Taylor to exit her vehicle, stand on the other side of the road, and wait until Warden Peters arrived.

179.   When Warden Peters arrived he read out loud a Mandatory Leave Placement Letter to Taylor that placed her on leave for ten (10) days.

180.   In or around September 23, 2020, Taylor emailed Warden Peters about coming back to work.

181.   Warden Peters said her mandatory leave was extended ten (10) more days.

182.   In or around September 30, 2020, Taylor received a letter stating that her employment had been terminated, but the letter was dated September 14, 2020.

183.   Defendant subjected Plaintiff to adverse treatment based on her disability by terminating her employment after she stayed four (4) nights in the hospital because of her disability.

184.   Plaintiff had a disability.

185.   Plaintiff was a qualified individual.

186.   Plaintiff has been discriminated and retaliated against in violation of the ADA/ADAA because of her disability and/or perceived disability by Defendant.

187.   Defendant terminated Plaintiff because she had a disability.

188.   Defendant acted with malicious intent and/or reckless disregard for Plaintiff's federally protected rights.

189.   Defendant's illegal discriminatory, harassing and adverse actions injured Plaintiff.

190.   Defendant took an adverse employment action against Plaintiff by forcing her to take mandatory leave and terminating her employment.

191.   Defendant has a habit and/or practice of discriminating against employees that engage in protected activity.

192.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit declaratory relief, back pay, front pay,

punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, and costs.

193.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this court.

## COUNT THREE

### STATEMENT OF PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 AGAINST LT. EDDIE WATTS

194.   Taylor was harassed because of her sex.

195.   Lt. Watts harassed Taylor because he was in a sexual relationship with Taylor, which Taylor ended.

196.   Lt. Watts intentionally committed acts that created a sexually hostile work environment.

197.   Lt. Watts physically and forcibly forced Taylor to give him oral sex without her consent.

198.   After being forced to engage in oral sex with Lt. Watt's, Taylor ended the relationship.

199.   Prior to ending the relationship, Taylor told Lt. Watt's that she was afraid of him.

200.   Lt. Watts responded by telling Taylor it was in his best interest not to betray him.

201.   When Taylor ended the sexual relationship Lt. Watts began treating her harshly at work.

202.   In or around May 3, 2020, as Taylor was walking into work, Lt. Watts, asked Taylor if she was going to pull her hair back.

203.   Taylor replied that she was going to pull her hair back when she got to her post.

204.   When Taylor got to her post she pulled her hair back.

205.   In or around May 4, 2020 at approximately 3:00 p.m. Taylor had a meeting with Captain Johnson, Captain Scott, and Warden Peters.

206.   Captain Johnson asked Taylor about her hair being down on May 3, 2020.

207.   During this meeting, Captain Johnson told Taylor that she had a bad attitude with Lt. Watts.

208.   Captain Johnson said he was tired of talking to Taylor about her calling in to miss work.

209.   Taylor and Captain Johnson had never talked about her calling into miss work prior to this conversation.

210.   During the same meeting, Captain Johnson told Taylor he did not want Taylor working on her shift.

211.   In or around May 6, 2020, Taylor was accused of stealing time at work.

212.   Around May 10, 2020, Lt. Watts approached Taylor at work and said no matter what Taylor said or tried to do to him with his superiors that it would not work.

213.   In or around May 11, 2020, Taylor sent a formal written complaint to Warden Peters and the Defendant's EEO representative, Ms. Contenna Moore.

214.   In Taylor's formal written complaint to Donaldson she complains of: how she was afraid of Lt. Watts; her sexual relationship with Lt. Watts; and the trauma she experienced when Lt. Watts forced her to give him oral sex.

215.   In or around May 13, 2020, and on the same day, Warden Peters sent Taylor a Pre-Dismissal Memorandum that alleged she committed six (6) violations and seven (7) infractions at work.

216.   From in or around May 25, 2020 to approximately June 21, 2020, Taylor began getting harassing anonymous text messages from an unidentified number.

217.   Taylor believes that it was Lt. Watts because he mentioned sensitive matters that Taylor told only him.

218.   The unidentified number kept talking about how he missed Taylor giving him oral sex, mentioned people Taylor worked with, and apologized for what he did.

219.   In or around July 10, 2020, Taylor was admitted in the hospital for

approximately four (4) nights for anxiety and depression.

220.   In or around July 17, 2020, Taylor returned to work and unexpectedly ran into Captain Johnson and had an anxiety attack.

221.   In or around July 17, 2020, Taylor was sent home from work.

222.   Shortly thereafter Taylor was accused of stealing contraband and using cocaine.

223.   Taylor submitted herself to drug screens and she was negative for using illegal drugs.

224.   Captain Johnson accused Taylor of being a "dirty cop".

225.   In or around August 10, 2020, Warden Peters and Warden Morgan accused Taylor of vandalizing Lt. Watts vehicle.

226.   Taylor did not vandalize Lt. Watts' car.

227.   In or around September 2, 2020, Taylor called Donaldson to see when she could return to work.

228.   Taylor was informed that Warden Peters sent an email to the staff saying she was not allowed on the premises.

229.   In or around September 4, 2020, Taylor went to work and was stopped at the gate by the K9 unit.

230.   When Warden Peters arrived he read out loud to Taylor a Mandatory Leave Placement Letter that placed her on leave for ten (10) days.

231.   In or around September 30, 2020, Taylor received a letter stating that her employment had been terminated.

232.   In or around October 17, 2020, Taylor received threatening text messages from the unknown number telling her: "I told you it was in your best interest not to betray me"; listing four officers that worked at Donaldson when she was employed there; and to "call off the lawsuit or the death you always wanted will approach you soon…"

233.   In or around November 20, 2020 at 7 p.m., Taylor was driving on I-459 and another car jarred at her car causing her to run off the road. At least two people on the passenger side of the threatening car began shooting their guns in the air.

234.   Taylor did not welcome these offensive acts or statements.

235.   The offensive acts or statements were so severe or pervasive that they materially altered the terms and conditions of Taylor's employment.

236.   A reasonable person would find these offensive acts or statements materially altered the terms and conditions of Taylor's employment.

237.   Taylor personally believes that Lt. Watt's actions poisoned her relationship with other superiors and materially altered the terms and conditions of her employment by leading to her termination.

238.   Lt. Watts had supervisory authority over Taylor in the terms and

conditions of her employment.

239.   Lt. Watts acted under color of state law by having supervisory authority over Plaintiff in the terms and conditions of Taylor's employment and abused that authority by telling other superiors of Taylor: she had a bad attitude towards him; she stole time at work; she was abusing cocaine and illicit drugs; she was stealing contraband; and that she vandalized Watts car.

240.   These offensive acts occurred once Taylor ended her relationship with Lt. Watts.

241.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit declaratory relief, back pay, front pay, punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, and costs.

242.   Plaintiff is now suffering and will continue to suffer irreparable injury from Defendant's unlawful policies and practices as set forth herein unless enjoined by this court.

## COUNT FOUR

### STATEMENT OF PLAINTIFF'S CLAIMS UNDER 42 U.S.C. § 1983 AGAINST WILLIAM DONALDSON CORRECTIONAL FACILITY

243.   Donaldson discriminated against Taylor in the terms, conditions, and privileges of employment.

244.   Donaldson failed to follow policy and procedure, when its decisionmakers failed to investigate Taylor's complaints of sexual harassment from Lt. Watts, and retaliating against her by writing her up on false disciplinary charges.

245.   Further, its decisionmakers failed to provide Taylor the proper treatment under the ADA/ADAAA after she spent four (4) nights in the hospital.

246.   Donaldson's decisionmakers also retaliated against Taylor in violation of the ADA/ADAA by terminating her after spending four (4) nights in the hospital.

247.   Despite this knowledge, Donaldson failed to properly train the decisionmakers, and allowed a pervasive atmosphere of discrimination and retaliation to exist within the workplace.

248.   This inaction from Donaldson was a policy or custom which allowed and condoned discrimination and retaliation in the workplace.

249.   These acts and omissions caused Taylor to suffer damages.

250.   Plaintiff has no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit declaratory relief, back pay, front pay, punitive damages, compensatory damages (including damages for mental anguish), interest, attorney fees, expenses, and costs.

251.    Plaintiff is now suffering and will continue to suffer irreparable injury

from Defendant's unlawful policies and practices as set forth herein unless enjoined by this court.

## COUNT FIVE

### STATEMENT OF PLAINTIFF'S INVASION OF PRIVACY CLAIMS AGAINST LT. EDDIE WATTS & WILLIAM DONALDSON CORRECTIONAL FACILITY

252.   Taylor realleges paragraphs 1–10, 12–37, 54-62, 74-76, and 84-96 as if fully set out herein. This is a claim for invasion into Taylor's privacy based on the laws of the State of Alabama.

253.   Lt. Watts invaded Taylor's personal and emotional sanctum by forcing her to give him oral sex and text messaging her obscene and vulgar messages.

254.   Lt. Watts kept sexually propositioning Taylor to keep giving him oral sex and sex after their relationship ended.

255.   Donaldson invaded Taylor's privacy by ratifying Lt. Watts decisions to harass Taylor and not doing a proper investigation.

256.   Donaldson had actual notice of the actions complained of by Taylor on May 11, 2020.

257.   Donaldson knew of discriminatory comments, harassing comments, unwanted sexual advances that Taylor was subjected to by Lt. Watts.

258.   Taylor formally complained about the gender discrimination and sexual harassment she was facing.

259.   Donaldson having such knowledge, ratified Lt. Watts' conduct by failing to investigate, remedy, or otherwise respond to Taylor's complaints of discrimination and retaliation.

260.   Lt. Watts placed Taylor in a false light with her peers and coworkers by denying Taylor's allegations in her formal complaint.

261.   Donaldson, placed Taylor in a false light with her peers and her fellow employees by placing her on mandatory leave and refusing to allow her on Donaldson's premises.

262.   Lt. Watts' and Donaldson's conduct proximately caused Taylor to suffer embarrassment, humiliation, shame, pain and suffering, loss of reputation, loss of career opportunity, emotional distress, loss of pay and benefits, and mental anguish for which she claims damages.

263.   Taylor seeks declaratory and injunctive relief, award of nominal, compensatory and punitive damages for humiliation, embarrassment, and mental anguish, costs, interest, attorneys' fees, and any other such relief as the trier of fact may assess.

## COUNT SIX

### STATEMENT OF PLAINTIFF'S ASSAULT & BATTERY CLAIMS
### AGAINST LT. EDDIE WATTS & WILLIAM DONALDSON CORRECTIONAL FACILITY

264.   Taylor realleges paragraphs 1–10, 12–37, 54-62, 74-76, and 84-100, as if fully set out herein. This is a claim for assault and battery based on the laws

of the State of Alabama.

265.   Lt. Watts subjected Taylor to the threat of offensive and unwanted touching by forcing her to have oral sex with him.

266.   Lt. Watts subjected Taylor to offensive and unwanted touching.

267.   Lt. Watts' conduct offended and embarrassed Taylor.

268.   Lt. Watts text messaged Taylor threatening texts that: "you know I can make this all go away. All you have to do is come over"; "you know we have power. We have power both ways…you should know how we operate"; and "call off this lawsuit or the death you always wanted will approach you soon.."

269.   Taylor feared for her life after receiving theses text messages.

270.   Donaldson ratified and permitted Defendant Lt. Watts' conduct.

271.   Donaldson is liable for the conduct of Lt. Watts.

272.   Donaldson and Lt. Watts injured Taylor.

273.   Lt. Watts' and Donaldson's conduct proximately caused Taylor to suffer embarrassment, humiliation, shame, pain and suffering, loss of reputation, loss of career opportunity, emotional distress, loss of pay and benefits, and mental anguish for which she claims damages.

274.   Taylor seeks declaratory and injunctive relief, award of nominal, compensatory and punitive damages for humiliation, embarrassment, and mental anguish, costs, interest, attorneys' fees, and any other such relief as the trier of fact

may assess.

## COUNT SEVEN

### STATEMENT OF PLAINTIFF'S CLAIMS FOR THE
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### AGAINST LT. EDDIE WATTS & WILLIAM DONALDSON CORRECTIONAL FACILITY

275.   Taylor realleges paragraphs 1–10, 12–37, 54-62, 74-76, and 84-100 as if fully set out herein. This is a claim arising under the laws of the State of Alabama which prohibit the intentional infliction of emotional distress.

276.   Lt. Watts's adverse treatment of Taylor, in particular his subjection of her to severe, degrading, and humiliating discrimination and harassment, despite her complaints, was outrageous, extreme, and beyond the bounds of decency.

277.   Lt. Watts made sexual comments and gender derogatory remarks to Taylor.

278.   Lt. Watts sexually forced Taylor to give him oral sex.

279.   Lt. Watts called Taylor vulgar and obscene names via text messaging.

280.   Donaldson knew about his discriminatory and harassing conduct, yet it failed to investigate of remedy Taylor's complaints.

281.   Donaldson ratified Lt. Watts's conduct, which was intentional, willful, and employed to inflict severe emotional distress upon Taylor.

282.   Lt. Watts and Donaldson knew that Taylor suffered from depression and anxiety.

283.   Lt. Watts and Donaldson knew of Taylor's disabilities and used that knowledge to control, harass, bully and demean her as a professional and as a person.

284.   Lt. Watts's conduct, ratified by Donaldson, is not condoned by society and should not go unpunished.

285.   As a proximate result of Donaldson's unlawful conduct, Taylor suffered adverse terms and conditions of employment, financial loss, humiliation, mental anguish, trauma and embarrassment, loss of reputation, and loss of career opportunity.

286.   Taylor seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, nominal, compensatory and punitive damages for humiliation, embarrassment, and mental anguish, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

**WHEREFORE**, Plaintiff respectfully requests this Court:

A.     Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with it, from engaging further in its discriminatory treatment on the basis of gender, disability, and retaliation based on protected activity;

B.     Order Defendant to institute and carry out policies, practices and

programs which provide equal provisions and employment opportunities for all employees, and which eradicate the effects of its past and present unlawful employment practices, including implementing policies against gender and disability discrimination in the work place and against retaliation for engaging in protected activities;

C.      Order Defendant to make Taylor whole by providing front pay, back pay, with prejudgment interest, back pay with prejudgment interest, in amounts to be proved at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including, but not limited to, Lt. Watts's termination, compensatory damages, punitive and liquidated damages;

D.      Award the Plaintiff nominal, compensatory, punitive and liquidated damages;

E.      Award the Plaintiff her costs and expenses herein, including reasonable attorney fees; and,

F.      Award such other and further relief which this Court deems necessary and proper.

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY

/s/ *Nicole D. Edwards*
State Bar No.: ASB-4832-B19D
*Attorney for Plaintiff*

**OF COUNSEL:**
**EDWARDS & EDWARDS ATTORNEYS**
**AND MEDIATORS, PLLC**
3603 Pine Lane SE, Ste. C
Bessemer, AL 35022
Tel.:   (205) 549-1379
Fax:   (205) 719-4033
E-mail: nicole@edwardsattys.com

**PLAINTIFF'S ADDRESS**:
Ms. Takira Taylor
c/o EDWARDS & EDWARDS
ATTORNEYS AND MEDIATORS, PLLC
3603 Pine Lane, Suite C
Bessemer, Alabama 35022

**PLEASE SERVE DEFENDANTS AT THE FOLLOWING ADDRESS:**
William Donaldson Correctional Facility
100 Warrior Lane
Bessemer, AL 35023-7299

Alabama Department of Corrections
301 Ripley Street
Montgomery, AL 36104

Lt. Eddie Watts
100 Warrior Lane
Bessemer, AL 35023-7299