FILED

2023 Sep-13  AM 08:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **TAKIRA TAYLOR,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | **Case No.: 2:21-cv-00832-ACA** |
| | ] | |
| **ALABAMA DEPARTMENT OF** | ] | |
| **CORRECTIONS d/b/a** | ] | |
| **WILLIAM DONALDSON** | ] | |
| **CORRECTIONAL FACILITY,** | ] | |
| **et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## <u>MEMORANDUM OPINION</u>

Plaintiff Takira Taylor was employed by the Alabama Department of Corrections ("ADOC") as a correctional officer at William E. Donaldson Correctional Facility. Ms. Taylor and Defendant Eddie Watts, a lieutenant officer at Donaldson, began a consensual sexual relationship outside of work that became abusive. Ms. Taylor ended the relationship and then filed a complaint with officials at Donaldson alleging that Lt. Watts sexually harassed her and subjected her to a hostile work environment.

Two days after filing her complaint of harassment, Donaldson's Warden, Kenneth Peters, drafted a pre-dismissal notice, recommending that the ADOC terminate Ms. Taylor's employment for violating ADOC policies and procedures

based on conduct that occurred several days before she filed her complaint. Warden Peters held a pre-termination hearing, and the ADOC terminated Ms. Taylor's employment.

After her termination, Ms. Taylor filed this lawsuit against the ADOC and Lt. Watts. The remaining claims against ADOC are for sex discrimination ("Count 1(a)"), sexual harassment ("Count 1(b)"), and retaliation ("Count 1(c)"), in violation of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-2(a), 2000e-3(a); and disability discrimination, in violation of the Americans with Disabilities Amendments Act ("ADA"), 42 U.S.C. § 12112, as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA") ("Count 2"). Ms. Taylor's remaining claims against Lt. Watts are for sex discrimination, in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, under 42 U.S.C. § 1983 ("Count 3"), invasion of privacy ("Count 5"), assault and battery ("Count 6"), and intentional infliction of emotional distress ("Count 7"). (Doc. 4 at 13–36; *see also* doc. 64). ADOC and Lt. Watts have each moved for summary judgment. (Docs. 80, 81).

The court **WILL GRANT IN PART** and **DENY IN PART** the motions. Ms. Taylor has not created triable issues of fact on her Title VII claims for discriminatory termination and sexual harassment against the ADOC; her ADA claim against the ADOC; or her § 1983 equal protection claim against Lt. Watts.

Therefore, the court **WILL GRANT** the motions for summary judgment on Counts 1(a), 1(b), 2, and 3. Triable issues of fact exist with respect to Ms. Taylor's Title VII retaliation claim against the ADOC and her state law claims against Lt. Watts. Therefore, the court **WILL DENY** the motions for summary judgment on Counts 1(c), 5, 6, and 7.

## I.    BACKGROUND

In deciding a motion for summary judgment, the court "view[s] all evidence and draw[s] all reasonable inferences in the light most favorable to the non-moving party." *Hallums v. Infinity Ins. Co.*, 945 F.3d 1144, 1148 (11th Cir. 2019). "[W]here there are varying accounts of what happened," the court must "adopt the account most favorable to" Ms. Taylor. *Smith v. LePage*, 834 F.3d 1285, 1296 (11th Cir. 2016) (quotation marks omitted); *see also Cantu v. City of Dothan*, 974 F.3d 1217, 1222 (11th Cir. 2020) ("The 'facts' at the summary judgment stage are not necessarily the true, historical facts; they may not be what a jury at trial would, or will, determine to be the facts.").

ADOC hired Ms. Taylor in the spring of 2019 to work at Donaldson Correctional Facility and promoted her to correctional officer in November of that year. (Doc. 107-1 at 9; doc. 107-2 at 11). While working at Donaldson, Ms. Taylor met Lt. Watts. He generally worked a different shift than Ms. Taylor and was not her direct supervisor. (Doc. 107-1 at 13). But if Ms. Taylor volunteered to work

overtime on Lt. Watts's shift, she had to follow his orders because he was above her in rank. (Doc. 107-4 at 10; doc. 107-6 at 16–17).

In late December 2019, Ms. Taylor and Lt. Watts began a consensual sexual relationship that took place exclusively outside of work. (Doc. 107-1 at 12, 52; 107-3 at 57, 92). Lt. Watts soon became physically violent with Ms. Taylor. In late January 2020 and early February 2020, Lt. Watts slapped Ms. Taylor in the face on two different occasions while the two were at Lt. Watts's house. (Doc. 107-1 at 55–56). In late February 2020, Lt. Watts slapped Ms. Taylor, choked Ms. Taylor against the wall when she tried to leave his house, and told her she "was going to learn to obey him." (*Id.* at 57). Lt. Watts also hit Ms. Taylor in March 2020. (*Id.* at 55). In early April 2020, while at Lt. Watts's house, he forced Ms. Taylor to perform oral sex. (*Id.* at 72, 75). Ms. Taylor ended the sexual relationship with Lt. Watts after that encounter, but she wanted to make amends so that their relationship at work would not be affected. (Doc. 107-1 at 54, 71).

In April 2020, Ms. Taylor told Captain Shannon Caldwell and Officer Fabian Banks about how Lt. Watts had treated her. (Doc. 107-1 at 27, 36; doc. 110-1 at 10). Officer Banks encouraged Ms. Taylor to submit a formal complaint. (Doc. 110-1 at 10). Under ADOC's administrative regulation 206 ("AR 206"), an employee complaining about harassment complaint should submit ADOC Form 206 to "the Institutional/Divisional EEO Officer or immediate supervisor." (Doc. 107-3 at 50).

However, AR 206 also permits oral complaints. (*Id.*). If an employee makes an oral complaint, "[t]he employee or supervisor who receives an oral complaint of harassment or discrimination shall promptly document and forward it to the Institutional/Divisional EEO Officer, Warden, or Division Director." (*Id.* at 51). Despite Officer Banks's advice, Ms. Taylor did not submit a complaint in April 2020.

Ms. Taylor was scheduled to be off work on May 6, 2020 but ended up working second shift that day. (Doc. 107-1 at 20; doc. 107-2 at 33). Just before midnight, someone reported to a lieutenant that while on duty earlier in the day, Ms. Taylor left Donaldson for approximately three hours without permission from a shift supervisor. (Doc. 107-2 at 33). On May 7, 2020, Ms. Taylor submitted an overtime request for all hours she had worked the day before. (*Id.* at 35). Warden Peters began an investigation into the matter after a supervisory captain told him about the alleged discrepancy. (Doc. 107-9 at 2 ¶ 5).

As part of his investigation, Warden Peters reviewed shift logs kept by the communications operator which showed Ms. Taylor exiting Donaldson at 6:58 p.m. on May 6 and not returning until 9:58 p.m. (Doc. 107-9 at 3 ¶ 7; *id* at 9–10; *see also* doc. 107-1 at 19, 23). Warden Peters also received and considered statements from a number of individuals. (Doc. 107-9 at 3 ¶ 10).

Communication Operator Marcy Humphreys submitted a written statement that she witnessed Ms. Taylor exit Donaldson and not return until approximately three hours later. (Doc. 107-9 at 13–14). Communications Operator Victoria Woods provided a written statement saying that she witnessed Ms. Taylor leaving Donaldson around 7:00 p.m. on May 6, 2020. (*Id.* at 15). Sergeant Cordaro Melton submitted a statement that he witnessed Ms. Taylor enter Donaldson around 9:40 p.m. on May 6 and walk by as he was conducting searches of officers arriving for the upcoming shift. (*Id.* at 12).

Ms. Taylor denied the allegations and submitted a statement that around 7:15 p.m. on May 6, 2020, she left to give Officer Fabian Banks food in a different tower, returned to her post, and did not leave Donaldson until she clocked out at 1:00 a.m. on May 7, 2020. (*Id.* at 11). Officer Banks submitted a similar statement corroborating Ms. Taylor's version of events. (*Id.* at 16). On May 7, 2020, another correctional officer submitted a statement that that Ms. Taylor worked from 10:00 p.m. on May 6, 2020 until 1:00 a.m. on May 7, 2020 in the infirmary unit. (*Id.* at 17). A nurse who works for a company that provides medical care to inmates at Donaldson submitted a statement that she saw and talked to Ms. Taylor in the infirmary at 8:30 p.m. on May 6, 2020. (*Id.* at 18; *see* doc. 110-6 at 2).

On May 11, 2020, while Warden Peters was conducting his investigation into the events of May 6 and 7, Ms. Taylor emailed him a complaint of harassment and

discrimination as required by AR 206. (Doc. 107-9 at 5 ¶ 15; *see* doc. 107-3 at 55–61). The complaint alleged that Lt. Watts had subjected Ms. Taylor to sexual harassment that created a hostile working environment. (Doc. 107-3 at 55–61). The day he received the complaint, Warden Peters questioned Lt. Watts, who admitted he and Ms. Taylor had been involved in a relationship and submitted a written statement denying Ms. Taylor's specific allegations of harassment. (Doc. 107-4 at 6; doc. 107-7 at 108–09). Warden Peters also spoke with Ms. Taylor but only questioned her about the relationship, not her claims of harassment. (Doc. 107-4 at 7). Consistent with ADOC policy, Warden Peters assigned the complaint to Donaldson Equal Employment Opportunity Officer Contenna Moore for an investigation. (Doc. 107-9 at 5 ¶ 15; doc. 107-12 at 2 ¶¶ 2, 4).

Two days later—and before Ms. Moore had completed her investigation—Warden Peters issued letters of instruction to both Lt. Watts and Ms. Taylor ordering them not have any contact. (Doc. 107-2 at 46–47; *see also* doc. 107-1 at 14–15; doc. 107-4 at 7). The letters of instruction explained that their relationship violated the ADOC fraternization policy but stated that "there is no evidence or proof of any harassment going on by Lieutenant Watts." (Doc. 107-2 at 46–47). The letters also concluded that Ms. Taylor had not been in a hostile work environment. (*Id.*).

That same day, Warden Peters drafted a pre-dismissal notice to Ms. Taylor in which he recommended that the ADOC terminate her employment for the alleged

misconduct that occurred on May 6 and 7, 2020. (Doc. 107-2 at 33–34). The notice alleged that Ms. Taylor left Donaldson for three hours on May 6, 2020 without permission and then attempted to receive overtime for those hours. (*Id.* at 33). The notice also accused Ms. Taylor of purposefully walking around the x-ray machine to avoid being searched when she returned to Donaldson on the evening of May 6. (*Id.*). Warden Peters scheduled a pre-dismissal conference for July 1, 2020 during which Ms. Taylor could "tell [her] side of the story." (*Id.* at 34). Ms. Taylor was invited to present written statements of witnesses or any other information she wished to provide about the charges against her. (*Id.*). The notice explained that Ms. Taylor could resign in lieu of dismissal but stated it was "highly probable" that she would not be recommended for re-employment. (*Id.*).

There are disputes of fact about when Warden Peters was authorized to give the pre-dismissal notice to Ms. Taylor. Warden Peters initially testified that he had approval from then-ADOC Commissioner Jefferson Dunn to give Ms. Taylor a copy of the May 13, 2023 notice the day he drafted it or "shortly thereafter." (Doc. 107-4 at 14). But he also testified and submitted an affidavit attesting that he submitted the pre-dismissal letter through the chain of command for the Commissioner to review and that it can several weeks to obtain the Commissioner's approval to serve an employee with a pre-dismissal notice. (*Id.* at 39; doc. 107-9 at 4 ¶ 12). Because the court must accept the facts in the light most favorable to Ms. Taylor, for purposes of

summary judgment the court concludes a reasonable jury could find that Warden Peters was authorized to give Ms. Taylor the pre-dismissal notice on May 13, 2023 or very soon after. But he did not do so, waiting until June 2020 to give her a copy of the notice. (Doc. 107-2 at 34).

On May 20, 2020—after Warden Peters had drafted the pre-dismissal notice and received authorization to give it to Ms. Taylor—Ms. Moore issued a formal report finding that Ms. Taylor's sexual harassment complaint against Lt. Watts was unsubstantiated. (Doc. 107-12 at 17, 22–23). Shortly after the report was issued, Ms. Taylor began receiving text messages from an unidentified number. (Doc. 107-1 at 81-82). Over the course of several days, the individual sent her approximately fifty text messages. (Doc. 107-1 at 81–82; doc. 107-3 at 140–50; doc. 107-7 at 133–43). The substantial majority of the messages were sexually explicit and vulgar. (Doc. 107-7 at 133–35, 138-39). One message refers to the sender as a jealous male from Ms. Taylor's past. (Doc. 107-7 at 141). In one exchange, Ms. Taylor refers to the sender as "Eddie" and the individual did not correct her. (Doc. 107-3 at 134-150).

In June 2020, Ms. Taylor was diagnosed with severe reoccurring depression, anxiety, and post-traumatic stress disorder. (Doc. 107-1 at 37). She also received the pre-dismissal notice that month. (Doc. 107-2 at 34).

After the July 1, 2020 pre-dismissal conference, Warden Peters sent Commissioner Dunn a summary of the conference with a recommendation that ADOC dismiss Ms. Taylor. (Doc. 107-5 at 11–12). Ms. Taylor never saw a copy of this document before her termination. (Doc. 107-1 26).

Later in July, Ms. Taylor was hospitalized for several days for inpatient psychiatric treatment. (Doc. 107-1 at 48; Doc. 107-3 at 38; Doc. 107-17 at 4). On September 1, 2020, Ms. Taylor called in and said she was "pissed off" and if she came in, she would "hit somebody in the face." (Doc. 107-1 at 31; doc. 107-2 at 61). Warden Peters considered the statement a threat and placed Ms. Taylor on mandatory leave with Commissioner Dunn's approval. (Doc. 107-2 at 65; doc. 107-5 at 37; doc. 107-9 at 6 ¶ 22).

Two weeks later, Commissioner Dunn's office mailed Ms. Taylor a letter notifying her of her termination effective at the close of business on September 16, 2020. (Doc. 107-5 at 27–28). The letter explained that the Commissioner had reviewed Warden Peters's notice of intent to recommend dismissal and agreed with the recommendation for the reasons outlined in Warden Peters's memo. (*Id.*; *see* doc. 107-5 at 1–2).

After her termination, Ms. Taylor received approximately twenty text messages from an unidentified number. (Doc. 107-1 at 79; doc. 107-3 at 134–39). Among others, the sender texted the following messages: (1) "answer the phone

stupid bitch"; (2) "i told you it was in your best interest not to betray me"; (3) "their

[sic] is no way you can run from us"; (4) "why didn't you just do what you were

told"; (5) "you had some good p**** and head I tell you that"; (6) "i'll still own

you"; (6) "you know i can make all this go away. all you have to do is come over";

(7) "i came for you and i still have that soft spot in my heart for you. i miss you";

and (8) call off the lawsuit or death you always wanted will approach you very soon."

(Doc. 107-3 at 134–39). Ms. Taylor responded to some of the messages and also told

the sender to "leave [her] alone." (*Id.* at 134).

## II.  DISCUSSION

The court must grant summary judgment if the movant establishes that "there

is no genuine dispute as to any material fact and the movant is entitled to judgment

as a matter of law." Fed. R. Civ. P. 56(a); *see also Hellums*, 945 F.3d at 1148. "There

is a genuine issue of material fact if the nonmoving party has produced evidence

such that a reasonable factfinder could return a verdict in its favor." *Looney v.

Moore*, 886 F.3d 1058, 1062 (11th Cir. 2018) (cleaned up).

ADOC and Lt. Watts move for summary judgment on all claims asserted

against them. The court begins by analyzing Ms. Taylor's claims against ADOC and

then examines her claims against Lt. Watts.

1.    Count 1: Title VII Claims Against ADOC

Count 1 is confusingly pleaded. (*See* doc. 4 at 13–19). It is titled "Statement of Plaintiff's Title VII Claims / Sexual Harassment & Retaliation Against William Donaldson Correctional Facility." (*Id.* at 13). Despite only referencing sexual harassment and retaliation in the title, some of the fifty-one paragraphs in the count could be construed to allege discriminatory termination. (*See id.* at 18 ¶¶ 142–43). Because ADOC construes the count to assert all three types of claims, the court will address all three types of claims. The court refers to the discriminatory termination claim as Count 1(a), the sexual harassment claim as Count 1(b), and the retaliation claim as Count 1(c).

a.    *Count 1(a): Discriminatory Termination*

ADOC contends that Count 1(a) fails as a matter of law because Ms. Taylor has not identified any comparator whom ADOC treated more favorably. (Doc. 109 at 16–17). In response, Ms. Taylor states that "the use of comparators is only one way of proving discrimination." (Doc. 112 at 25). She does not, however, present any argument that a different method supports this claim of discriminatory termination. (*See id.* at 25–26; *cf. id.* at 39–42 (providing specific arguments about whether a convincing mosaic of circumstance evidence supports Ms. Taylor's other claims)). In the absence of any argument about why Ms. Taylor's discriminatory termination claim survives summary judgment, the court finds the claim abandoned.

*See Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc) ("[T]he onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *see also Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). Accordingly, the court **WILL GRANT** ADOC's motion for summary judgment on Ms. Taylor's Title VII discriminatory termination claim.

b.      *Count 1(b): Hostile Work Environment*

Count 1(b) alleges that ADOC subjected Ms. Taylor to a sexually hostile work environment in violation of Title VII. (Doc. 4 at 18 ¶¶ 144–45). To establish a sexually hostile work environment claim, a plaintiff must show:

> (1) that . . . she belongs to a protected group; (2) that the employee has been subject to unwelcome sexual harassment, such as sexual advances, requests for sexual favors, and other conduct of a sexual nature; (3) that the harassment must have been based on the sex of the employee; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) a basis for holding the employer liable.

*Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 808 (11th Cir. 2010) (en banc) (quoting *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc)).

ADOC argues that it is entitled to summary judgment on Ms. Taylor's hostile work environment claim because (1) the harassment was not "based on" Ms. Taylor's sex, but instead her relationship with Lt. Watts; (2) most of the

harassment occurred outside the workplace; (3) the harassment that occurred at the workplace was not severe or pervasive; and (4) it cannot be held liable for Lt. Watts's harassment because he was merely a coworker and as soon as Ms. Taylor complained, ADOC took remedial action. (Doc. 109 at 19–26). Ms. Taylor responds to the first three arguments but not the fourth. (*See* doc. 112 at 26–35). Because the court finds no genuine dispute of material fact about Lt. Watts's status as a worker and ADOC's remedial action, the court need not address the other arguments.

The basis for holding an employer liable for harassment depends on whether the harasser is the plaintiff's coworker or supervisor. *See Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013). If the harasser is a supervisor and takes a tangible employment action against the victim, the employer is vicariously liable for the harassment. *Id.* at 429. There is no dispute that Lt. Watts took no tangible employment actions against Ms. Taylor. If the harasser is a supervisor and does not take a tangible employment action against the victim, the employer is vicariously liable unless "it exercised reasonable care to prevent and promptly correct any harassing behavior and (2) . . . the plaintiff unreasonably failed to take advantage of any preventive or corrective opportunities that were provided." *Id.* at 429–30. If the harasser is a coworker, the employer is liable only "if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Miller v. Kentworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002).

As an initial matter, Ms. Taylor makes passing references to Lt. Watts being her supervisor, but she does not offer any argument about why, as a legal matter, he would qualify as her supervisor. (*See* doc. 112 at 3 ¶ 3, 20 ¶ 58, 32). The court has nevertheless considered whether reasonable jurors could find that Lt. Watts was Ms. Taylor's supervisor. "[A]n employee is a 'supervisor' for purposes of vicarious liability under Title VII if he or she is empowered by the employer to take tangible employment actions against the victim." *Vance*, 570 U.S. at 450. Ms. Taylor has offered no evidence that Lt. Watts had that power, so no reasonable jury could find that Lt. Watts was her supervisor.

Because Lt. Watts was Ms. Taylor's coworker, ADOC can be held liable for his harassing conduct only "if it knew or should have known of the harassing conduct but failed to take prompt remedial action." *Miller*, 277 F.3d at 1278. ADOC contends that it learned of the harassing conduct when Ms. Taylor filed the formal complaint, pursuant to AR 206, with Warden Peters on May 11, 2020, that Warden Peters quickly ordered Ms. Taylor and Lt. Watts to have no contact, and that the EEO officer immediately began an investigation. (Doc. 109 at 25–26). Ms. Taylor does not respond to this argument. (*See* doc. 112 at 26–33). She therefore has not established a dispute of fact about whether ADOC knew of the harassment before May 11, 2020. *See* Fed. R. Civ. P. 56(c)(1), (c)(3). Nor has she established a dispute of fact about whether ADOC should have known of the harassment before May 11,

2020. *See id.* Although Ms. Taylor briefly referenced having told two other ADOC employees about Lt. Watts's treatment of her (doc. 112 at 7 ¶ 12; *see* doc. 107-1 at 27, 36; doc. 110-1 at 10), she has not explained how their knowledge can be imputed to ADOC. No reasonable jury could find that ADOC knew or should have known of Lt. Watts's treatment of Ms. Taylor before May 11, 2020.

And no reasonable jury could find that ADOC failed to take "prompt remedial action" once it did know. *Miller*, 277 F.3d at 1278. Warden Peters quickly ordered Lt. Watts and Ms. Taylor to stop having any contact and the EEO officer to investigate. (Doc. 107-1 at 14–15; doc. 107-2 at 46–47; doc. 107-4 at 7; doc. 107-12 at 2 ¶¶ 4–6). The court finds this type of prompt remedial action was "reasonably likely to prevent the misconduct from recurring." *Wilcox v. Corr. Corp. of Am.*, 892 F.3d 1283, 1288 (11th Cir. 2018) (quotation marks omitted). Ms. Taylor's only argument about ADOC's remedial action—contained in an entirely separate section of her brief about other claims—is that ADOC did not initiate demotion proceedings against Lt. Watts until October 2020. (*See* doc. 112 at 26–33, 42). But the fact that ADOC delayed punishing Lt. Watts for his behavior does not mean that its immediate action to stop contact and investigate her claim was not prompt. Because Ms. Taylor has not presented evidence from which a reasonable jury could find a basis for holding ADOC liable for Lt. Watts's conduct, the court **WILL GRANT**

ADOC's motion for summary judgment on Ms. Taylor's hostile work environment claim.

   *c.*  *Count 1(c): Retaliation*

  Finally, Count 1(c) alleges that ADOC retaliated against Ms. Taylor in violation of Title VII by terminating her employment after she complained that Lt. Watts was sexually harassing her. (Doc. 4 at 19 ¶¶ 149–51).

  Retaliation claims under Title VII based on circumstantial evidence are analyzed under the the *McDonnell Douglas* burden shifting framework. *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1134–35 (11th Cir. 2020) (en banc). A plaintiff must first establish a *prima facie* case of retaliation by showing: "(1) that she engaged in statutorily protected activity, (2) that she suffered an adverse action, and (3) that the adverse action was causally related to the protected activity." *Id.* at 1134 (quotation marks omitted). If the plaintiff does so, the defendant must "articulate a legitimate, non-retaliatory reason" for its decision. *Id.* at 1135. If the defendant sustains its burden, then "to defeat summary judgment," the plaintiff must demonstrate both that the defendant's reason was pretext for unlawful retaliation and that "but for" the plaintiff's protected conduct, the defendant would not have taken an adverse action. *Id.* at 1136.

  ADOC argues that it is entitled to summary judgment on Ms. Taylor's Title VII retaliation claim because she cannot establish the causation element of her *prima*

*facie case* of retaliation, and even if she could, she cannot rebut ADOC's legitimate, non-retaliatory reasons for terminating her employment. (Doc. 109 at 26–34).

The court assumes, without deciding, that Ms. Taylor can establish a *prima facie* case of retaliation. Therefore, the burden shifts to ADOC to articulate legitimate, non-retaliatory reasons for terminating Ms. Taylor. Here, ADOC terminated Ms. Taylor's employment because Warden Peters concluded she falsified an overtime request for hours she had been absent without permission and failed to properly submit herself for search when she re-entered Donaldson on May 6, 2020 in violation of ADOC policy. (Doc. 109 at 29; *see* doc. 107-2 at 33–34; doc. 107-5 at 27). Therefore, Ms. Taylor must show that ADOC's reasons are pretext for unlawful retaliation.

When an employer takes an adverse action based on violation of a work rule, a plaintiff cannot show pretext if the employer honestly believed the employer violated policy, even if the belief is mistaken. *See Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1363 n.3 (11th Cir. 1999) ("An employer who fires an employee under the mistaken but honest impression that the employee violated a work rule is not liable for [retaliatory] conduct."); *EEOC v. Total Sys. Servs., Inc.*, 221 F.3d 1171, 1176 (11th Cir. 2000) (when an employer's investigation into workplace misconduct "produces contradictory accounts of significant historical events, the employer can lawfully make a choice between the conflicting versions—

that is, to accept one as true and to reject one as fictitious—at least, as long as the choice is an honest choice").

Ms. Taylor has presented no evidence or argument calling into question Warden Peters's belief that she left Donaldson for a period of time on May 6, 2020 and falsely attempted to obtain overtime for those hours or that she did not submit to a required search upon re-entry into the facility. (*See* doc. 112 at 39) And Ms. Taylor submits only that she need not do so "when arguing a convincing mosaic of facts." (*Id.*). Therefore, her Title VII retaliation claim cannot survive summary judgment under the *McDonell Douglas* framework.

Alternatively, Ms. Taylor argues that she can establish her Title VII retaliation claim through a convincing mosaic of circumstantial evidence. (Doc. 112 at 39–42). The Eleventh Circuit has not addressed in a published decision whether a plaintiff can establish retaliation by presenting a convincing mosaic of circumstantial evidence. *See Bailey v. Metro Ambulance Servs., Inc.*, 992 F.3d 1265, 1273 n.1 (11th Cir. 2021). But the parties assume that framework is available, so the court will do the same. (Doc. 112 at 39; doc. 114 at 7–8).

A plaintiff can survive summary judgment if she establishes "a convincing mosaic of circumstantial evidence that would allow a jury to infer" retaliatory conduct on the part of her employer. *Lewis*, 934 F.3d at 1185 (quotation marks omitted). A convincing mosaic "may be shown by evidence that demonstrates,

among other things, (1) suspicious timing, ambiguous statements, and other bits and pieces from which an inference of [retaliatory] intent might be drawn, (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185 (cleaned up).

Ms. Taylor argues that the following evidence creates a circumstantial mosaic from which a jury could infer that ADOC terminated her in retaliation for her complaints of sexual harassment: (1) Warden Peters's conclusion within two days of her filing the harassment complaint that no harassment had occurred and his questioning Ms. Taylor about the nature of her relationship with Lt. Watts as opposed to the substance of the facts alleged in the harassment complaint is evidence from which a juror could infer that Warden Peters did not conduct a genuine investigation into her complaint; (2) the May 13, 2020 pre-dismissal notice's statement that Ms. Taylor could resign in lieu of termination is evidence from which a jury could infer that Warden Peters had decided on May 13, 2020—just two days after her harassment complaint—that he wanted Ms. Taylor terminated; (3) Warden Peters's waiting until June 23, 2020 to give Ms. Taylor a copy of the May 13, 2020 pre-dismissal notice is evidence from which a jury could infer that he was stalling so she would only have one week to present a defense at the July 1, 2020 pre-termination conference. (Doc. 112 at 40–41).

The court agrees that a jury could infer from this evidence that Warden Peters did not take Ms. Taylor's harassment complaint seriously and wanted to avoid a meaningful investigation into the complaint and used the alleged misconduct (that Ms. Taylor denies occurred) which took place just days before the complaint as a cover to terminate her for filing the complaint. Alternatively, a jury could conclude that because Warden Peters was already investigating Ms. Taylor for alleged misconduct before Ms. Taylor filed her harassment complaint, ADOC terminated Ms. Taylor for that misconduct and not because of her complaint. A jury also could infer that by waiting several weeks to give Ms. Taylor a copy of the pre-dismissal notice, ADOC hoped to make it appear as though the termination had nothing to do with the complaint of discrimination. Alternatively, a jury could find that other reasons explain the delay.

Because the evidence creates triable issues of fact regarding ADOC's retaliatory intent, the court **WILL DENY** ADOC's motion for summary judgment on Ms. Taylor's Title VII retaliation claim.

2.      Count 2: ADA Discrimination Against ADOC

Count 2 of the amended complaint is titled "Statement of Plaintiff's ADA/ADAAA Disparate Treatment & Retaliation Claims." (Doc. 4 at 19). Although the count purports to assert a retaliation claim under the ADA, the court finds the title of the count is not controlling. Based on the substance of the actual allegations

contained in the count, Count 2 asserts a claim only for disparate treatment under the ADA. (*See id.* at 19–24). Specifically, Mr. Taylor alleges that ADOC discriminated against Ms. Taylor because of her disability when it placed her on mandatory leave and terminated her employment after she spent several nights in the hospital for psychiatric treatment. (*Id.* at 23 ¶¶ 183, 190).

Under the ADA, an employer may not "discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A plaintiff may prove a claim of disability discrimination through direct or circumstantial evidence. *Todd v. Fayette Cnty. Sch. Dist.*, 998 F.3d 1203, 1214 (11th Cir. 2021). Where, as here, a plaintiff relies on circumstantial evidence, the court analyzes a disability discrimination claim under the *McDonnell Douglas* burden-shifting framework. *Id.* at 1215. Under this framework, a plaintiff "must first establish a *prima facie* case of disability discrimination" by showing "that she (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of her disability." *Id.* at 1215–16. If the plaintiff makes that showing, the defendant then has the burden of production . . . to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1216. If the defendant does so, the plaintiff bears the burden of showing that the defendant's articulated reason is pretext of unlawful disability discrimination. *Todd*, 988 F.3d at 1216.

ADOC argues that Ms. Taylor's ADA discrimination claim fails because she cannot establish a *prima facie* case, and even if she could, she cannot show that its articulated reasons for its adverse actions are pretext for unlawful discrimination. (Doc. 109 at 34–37).

Assuming without deciding that Ms. Taylor can establish a *prima facie* case of disability discrimination, she has not offered evidence calling into question ADOC's reasons for its adverse actions. First, with respect to Ms. Taylor's mandatory leave, ADOC argues that it placed Ms. Taylor on leave due to the threatening nature of comments she made to a sergeant when she called to report that she would not be at work on September 1, 2020 because she was "pissed off," and if she came in, she was "gonna hit somebody in the face." (Doc. 107-2 at 61; doc. 107-9 at 6 ¶ 22). And again, ADOC terminated Ms. Taylor for falsifying an overtime request for hours she had been absent without permission and failing to properly submit herself to screening procedures when she re-entered Donaldson on May 6, 2020 in violation of ADOC policy. (Doc. 109 at 29; *see* doc. 107-2 at 33–34; doc. 107-5 at 27–28). These are legitimate, non-discriminatory reasons for ADOC's actions, and Ms. Taylor's brief makes no argument about nor presents any evidence demonstrating that these reasons are pretext for unlawful disability discrimination. (*See* doc. 112 at 33–35).

Instead, Ms. Taylor argues that her disability discrimination claim survives summary judgment under a convincing mosaic of circumstantial evidence. (Doc. 112 at 39, 42). Assuming a plaintiff may establish a disability discrimination claim through the convincing mosaic framework, Ms. Taylor's effort fails. Ms. Taylor argues that a reasonable jury could conclude that ADOC regarded her as disabled in May 2020 because Warden Peters and other ADOC employees knew she suffered from depression and anxiety. (*Id.* at 42). Even if Warden Peters and others knew about Ms. Taylor's disability, Ms. Taylor has not argued or shown how knowledge of her disability alone raises an inference that ADOC placed her leave or terminated her <u>because</u> of her disability. And the court expressly rejects the notion that a jury could infer intentional disability discrimination based on knowledge of the disability alone. Otherwise, every plaintiff who suffered an adverse employment action and who could establish her employer knew of her disability would succeed on a discrimination claim.

Accordingly, the court **WILL GRANT** ADOC's motion for summary judgment on Count 2.

### 3. Count 3: Section 1983 Claim Against Lt. Watts

Count 3 is titled "Plaintiff's Statement of Claims Under 42 U.S.C. § 1983 Against Lt. Eddie Watts." (Doc. 4 at 24). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred

by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979). Thus, "[t]o have a cause of action pursuant to § 1983, the plaintiff must allege that a person deprived her of a federal or constitutional right and that the person was acting under color of law." *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1522 (11th Cir. 1995).

Ms. Taylor's amended complaint does not identify what federal or constitutional right Lt. Watts allegedly violated. (*See* doc. 4 at 24–29). And although the court need not do so because Ms. Taylor is counseled, liberally construing the allegations in the complaint, the court finds that Ms. Taylor asserts a claim against Lt. Watts for violating her equal protection rights under the Fourteenth Amendment based on her gender by subjecting her to a sexually hostile work environment. (*See id.* at 24 ¶ 196). Specifically, Ms. Taylor alleges that when ended her sexual relationship with Lt. Watts, he "began treating her harshly at work." (*Id.* at 25 ¶ 201). According to the amended complaint, Lt. Watts "acted under color of law by having supervisory authority over [her] in the terms and conditions of" her employment and "abused that authority" by telling other supervisors that Ms. Taylor: (1) "had a bad attitude towards him;" (2) "stole time at work;" (3) "was abusing cocaine and illicit drugs;" (4) "was stealing contraband;" and (5) "vandalized [Lt.] Watts['s] car." (*Id.* at 29 ¶ 239).

Presumably because of the lack of clarity in how the amended complaint frames the claim, and likely in an effort to cover all possible allegations, Lt. Watts makes a number of persuasive but irrelevant arguments in support of summary judgment on claims Ms. Taylor does not actually assert. (*See* doc. 108 at 11–21; 26–29). Therefore, the court's discussion below focuses only on arguments that Lt. Watts makes with respect to the hostile work environment claim which is the only claim asserted in Count 3.

As the Eleventh Circuit has recognized, and as the parties agree (*see* doc. 108 at 10; doc. 111 at 23–33), "discrimination claims, including hostile work environment claims, brought under the Equal Protection Clause . . . are subject to the same standards of proof and employ the same analytical framework" as those brought under Title VII. *Bryant v. Jones*, 575 F.3d 1281, 1296 n.20 (11th Cir. 2009). Among other arguments in support of summary judgment on Ms. Taylor's equal protection hostile work environment claim, Lt. Watts contends that Ms. Taylor cannot show that any of his actions created a workplace "permeated with discriminatory intimidation, ridicule, and insult" that was "sufficiently severe or pervasive to alter the conditions of [her] employment and create an abusive work environment." (Doc. 108 at 22) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

In response, Ms. Taylor submits that Lt. Watts's slapping and choking her, telling her that she was going to learn to obey him, and forcing her to have oral sex subjected her to a severe and pervasive hostile work environment. (Doc. 111 at 28–32). But as alleged in the amended complaint, Ms. Taylor's equal protection claim against Lt. Watts is based on actions he allegedly took against her at work after she ended their relationship, not his abusive conduct during their relationship. (Doc. 4 at 25 ¶ 25, 29 ¶ 239). Because Ms. Taylor's brief does not make any argument about how Lt. Watts's conduct in the workplace altered the terms and conditions of her employment, Ms. Taylor has forfeited any argument on the claim she asserted against Lt. Watts in Count Three based on alleged workplace harassment. *See Campbell*, 26 F.4th at 890.

To the extent Ms. Taylor attempts to rely on Lt. Watts's conduct that occurred off work premises, including his physical violence toward her and forcing her to have oral sex, Ms. Taylor has neither alleged nor established that Lt. Watts acted under color of law by depriving her "of a right through the exercise of authority that []he has by virtue of h[is] government office or position," which is a necessary element of her § 1983 claim. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012) ("The dispositive question is whether the defendant was exercising the power she possessed based on state authority or was acting only as a

private individual."). Accordingly, the court **WILL GRANT** Lt. Watts's motion for summary judgment on Count Three.

    4.    <u>Count 5: Invasion of Privacy Claim Against Lt. Watts</u>

In Count 5, Ms. Taylor asserts an invasion of privacy claim against Lieutenant Watts for invading her personal and emotional sanctum by forcing her to give him oral sex and sending her obscene and vulgar text messages. (Doc. 4 at 31 ¶ 253). The amended complaint also alleges that Lt. Watts invaded Ms. Taylor's privacy by placing her in a false light with her peers and fellow employees. (*Id.* at 32 ¶ 261). Ms. Taylor's brief in response to Lt. Watts's motion for summary judgment does not address the false light claim. (*See* doc. 111 at 35–37). Therefore, Ms. Taylor has forfeited that claim, *see Campbell*, 26 F.4th at 890, and the court will address only the claim that Lt. Watts intruded Ms. Taylor's solitude or seclusion.

Under Alabama law, to establish a claim for invasion of privacy, a plaintiff must show "an offensive or objectionable prying or intrusion into" her "private affairs or concerns." *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 324 (Ala. 1989). Where, as here, a plaintiff alleges invasion of privacy based on sexual harassment (*see* doc. 4 at 31 ¶ 253; doc. 111 at 35), a plaintiff must establish "(1) that the matters intruded into are of a private nature; and (2) that the intrusion would be so offensive or objectionable that a reasonable person subjected to it would experience outrage,

mental suffering, shame, or humiliation." *Ex parte Atmore Cmty. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998).

Here, Ms. Taylor has presented evidence that Lt. Watts forced her to give him oral sex. (Doc. 107-1 at 41, 72). She also has presented evidence from which a reasonable juror could find that Lt. Watts sent Ms. Taylor numerous explicit text messages after she ended their relationship. (Doc. 107-1 at 79, 81–82; doc. 107-3 at 134–50; *see also* doc. 107-7 at 133–43). Lt. Watts argues that because the messages were sent from an unknown number and Ms. Taylor testified that she did not know who sent the message, Ms. Taylor cannot prove that he is responsible for the messages. (Doc. 108 at 34, 36). But the content of the messages would permit a juror to infer that Lt. Watts sent them. For example, the messages explain that the sender is someone from Ms. Taylor's past; the sender apologizes and propositions Ms. Taylor for sex acts; the sender threatens Ms. Taylor to dismiss her lawsuit or face death; and when Ms. Taylor refers to the sender as "Eddie," the individual does not correct her. (*See* doc. 107-3 at 134–50). A reasonable jury could infer from this evidence that Lt. Watts intruded into private matters and that Ms. Taylor would have been subject to outrage, mental suffering, shame, or humiliation as a result.

Because Ms. Taylor's evidence creates triable issues of fact on her invasion of privacy claim for intrusion into her seclusion, the court **WILL DENY** Lt. Watts's motion for summary judgment on Count 5.

5.      Count 6: Assault and Battery Against Lt. Watts

In Count 6, Ms. Taylor asserts assault and battery claims against Lt. Watts based on forcing her to have unwanted oral sex and subjecting her to offensive and unwanted touching. (Doc. 4 at 33 ¶¶ 265–66).

Under Alabama law, to establish a claim for assault, a plaintiff must establish "an intentional, unlawful offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a wellfounded fear of an imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented." *Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995). To establish a claim for battery, a plaintiff must show: "(1) that the defendant touched the plaintiff; (2) that the defendant intended to touch the plaintiff; and (3) that the touching was conducted in a harmful or offensive manner." *Harper v. Winston Cnty.*, 892 So. 2d 346, 353 (Ala. 2004); *see Wright*, 654 So. 2d at 544 ("A successful assault becomes a battery, which consists of the touching of another in a hostile manner.").

Lt. Watts argues that Ms. Taylor's assault and battery claims fail because she has not presented evidence that she was harmed. (Doc. 108 at 35). The court disagrees. The evidence, in the light most favorable to Ms. Taylor, establishes that Lt. Watts was physically violent with Ms. Taylor on at least four occasions. (Doc. 107-1 at 55–57). Accepting Ms. Taylor's testimony as true, the evidence also

establishes that Lt. Watts forced her to have oral sex with him. (*Id.* at 72–75). Therefore, Ms. Taylor has presented sufficient evidence for a jury to find that Lt. Watts harmed her not only by unlawfully attempting to touch Ms. Taylor in a rude or angry manner but actually doing so in an intentional, unwelcome, and harmful or offensive way.

Accordingly, the court **WILL DENY** Lt. Watts's motion for summary judgment on Count 6.

6.    Count 7: Intentional Infliction of Emotional Distress Claim Against Lt. Watts

In Count 7, Ms. Taylor asserts a claim for intentional infliction of emotional distress against Lt. Watts based on his forcing her to perform oral sex and sending obscene and vulgar text messages. (Doc. 4 at 34–35).

To establish a claim for intentional infliction of emotional distress (also known as outrage) under Alabama law, a plaintiff must show that the defendant's conduct "(1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it." *Harrelson v. R.J.*, 882 So. 2d 317, 322 (Ala. 2003) (quotation marks omitted).

Because "[t]he tort of outrage is an extremely limited cause of action," the Alabama Supreme Court historically recognized the tort in only three circumstances: "(1) wrongful conduct in the family-burial context; (2) barbaric methods employed

to coerce an insurance settlement; and (3) egregious sexual harassment." *Potts v. Hayes*, 771 So. 2d 462, 465 (Ala. 2000) (cleaned up). However, the Alabama Supreme Court has not held that "the tort of outrage is viable in only the three circumstances noted in *Potts*." *Little v. Robinson*, 72 So. 3d 1168, 1173 (Ala. 2011). Still, an outrage claim "is viable only when the conduct is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 1173 (quotation marks omitted).

Lt. Watts argues that Ms. Taylor's intentional infliction of emotional distress claim fails as a matter of law because she has not shown how his conduct was sufficiently egregious enough to support the claim. (Doc. 108 at 37). The court disagrees.

The same evidence that supports Ms. Taylor's invasion of privacy, assault, and battery claims creates triable issues of fact on her intentional infliction of emotional distress claim. *See supra* pp. 32–35. Accordingly, the court **WILL DENY** Lt. Watts's motion for summary judgment on Count 7.

## III.   CONCLUSION

The court **WILL GRANT IN PART** and **WILL DENY IN PART** ADOC's and Lt. Watts's motions for summary judgment.

The court **WILL GRANT** ADOC's motion for summary judgment on Ms. Taylor's Title VII discriminatory termination and sexual harassment claims in Count 1(a) and 1(b) and Ms. Taylor's ADA discrimination claim in Count 2. The court **WILL DENY** ADOC's motion for summary judgment on Ms. Taylor's Title VII retaliation claim in Count 1(c).

The court **WILL GRANT** Lt. Watts's motion for summary judgment on Ms. Taylor's §1983 equal protection claim in Count 3. The court **WILL DENY** Lt. Watts's motion for summary judgment on Ms. Taylor's state law claims asserted in Counts 5, 6, and 7.

The court will enter a separate partial summary judgment consistent with this memorandum opinion.

**DONE** and **ORDERED** this September 13, 2023.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE